UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-CV-5254 |
| | ) | |
| v. | ) | |
| | ) | |
| SULZER a/k/a SULZER PUMP | ) | |
| SOLUTIONS, INC. a/k/a | ) | |
| SULZER MANAGEMENT, LTD. a/k/a | ) | |
| SULZER PUMP SERVICES (US) INC. | ) | Plaintiff Demands |
| | ) | Trial By Jury |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiff Edward Gonzalez ("Plaintiff" or "Gonzalez"), by his attorneys, Daniel I. Schlade and James M. Dore/Dore Law Offices LLC, complains against Defendant Sulzer a/k/a Sulzer Pump Solutions, Inc. a/k/a Sulzer Management, Ltd., a/k/a Sulzer Pump Services (US) Inc. ("Sulzer" or "Defendant"), and in support of this Complaint, states:

### Jurisdiction and Venue

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. § 1981a, the Civil Rights Act of 1866 as codified by 42 U.S.C. § 1981.

2. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the laws of the United States, specifically Title VII, 42 U.S.C. 2000e, and 42 U.S.C. 1981.

3. This case involves claims for race, color, and national origin discrimination; and all complained of conduct occurred in Will County, Illinois.

**Parties**

4. Plaintiff Gonzalez is an American citizen of Guatemalan/Latino descent, who currently resides in Romeoville, Illinois. He was formerly employed by Defendant Sulzer.

5. Defendant Sulzer is a Delaware corporation registered to do business in the state of Illinois, and that operates a facility at 2600 City's Edge, Joliet, Illinois 60436. Sulzer employs at least 900 individuals, and thus it is a covered employer under Title VII.

**Exhaustion of Administrative Remedies**

6. On July 13, 2020, Gonzalez filed a charge of discrimination against Sulzer with the EEOC, Charge No. 440-2020-05699, alleging national origin, race, and color discrimination against Sulzer.

7. On August 5, 2021, Plaintiff received a Notice of Right to Sue from the EEOC. *See* Exhibit A, attached hereto. Plaintiff filed his Complaint within ninety (90) days of receipt of the Notice of Right to Sue. Plaintiff has fully complied with all prerequisites to jurisdiction to this Court under Title VII.

**Statement of Facts**

8. Gonzalez began working for Sulzer in or about 2010. At all times, Gonzalez was employed by Sulzer as a welder. Plaintiff's employment was terminated by Defendant in June 2020.

9. Beginning around 2017, shortly after President Donald Trump took office, Gonzalez's workers felt emboldened and began making numerous racist and discriminatory statements about the Latino community, both in the presence of Gonzalez and directed at Gonzalez. Many of these comments were racist and of the nature that Latino individuals should stay out of America and not come to the country. Below is an itemization of the discriminatory and racist behavior.

**Discriminatory And Racist Coworkers And Conduct**

**Jim Wellman:**

10. Jim Wellman ("Wellman") is an employee of Defendant and a coworker of Plaintiff who worked in close contact with Plaintiff on a daily or near daily basis. Wellman was also a welder and machinist.

11. Beginning in or about 2017, he constantly complained about immigrants coming to America, and he would badger Plaintiff about his immigration status and whether he was legally in the country.

12. Wellman would constantly complain about Latinos "coming to our country" and "taking our jobs."

13. After Wellman learned that Plaintiff is of Guatemalan descent, Wellman developed a derogatory nickname for Plaintiff: "Guata[.]" Wellman would regularly refer to Plaintiff as Guata both directly and when speaking to other coworkers.

14. Sometimes, in order to mock Plaintiff, Wellman would use the phrase: "there's the easy way, the hard way, and the Guata way."

15. Wellman would also use more common derogatory names when talking about members of the Latino community, such as "wetbacks[.]" Wellman also referred to members of the Latino community as "rapists" or "rapers[.]"

16. After Wellman learned that Plaintiff sometimes listened to rap music, Wellman would tell Plaintiff that he didn't like rap and he would say "why do you listen to that nigger music."

**Chris Tallarita:**

17. Chris Tallarita ("Tallarita") is another employee of Defendant and a former co-worker of Plaintiff. Tallarita is a mechanic and machinist.

18. Tallarita regularly used racist and discriminatory language while speaking with Plaintiff or in the presence of Plaintiff. Examples of words that he frequently used included: "wetbacks", "dirty elbows", and "niggers".

19. When Plaintiff or other coworkers would confront Tallarita about his discriminatory and offensive conduct, Tallarita would respond "we're white, we can do whatever we want." Tallarita used this phrase frequently between 2017 and 2020.

20. Anytime a delivery would show up and the delivery person appeared to be of Latino descent, Tallarita would refuse to get the package and he would direct Plaintiff to "go get your people." This happened on average once or twice a month from 2017 through Plaintiff's termination in June 2020.

21. On occasion, Plaintiff would speak Spanish to Latino delivery people. Tallarita would often become angry when Plaintiff spoke Spanish, and he would make comments such as "this is America, speak English."

**Jim Schoonover:**

22. Jim Schoonover ("Schoonover") is another employee of Defendant and former co-worker of Plaintiff. Schoonover was an engineer.

23. Beginning in or about 2018, Schoonover began making discriminatory and racist comments, similar to those made by Wellman and Tallarita. Many of these were complaints about immigrants and Latino individuals coming into America.

24. On one occasion, Plaintiff was around Schoonover and other of Defendant's employees, when Schoonover made a comment that his niece had just received a high paying job and she was getting married. Plaintiff made a joke that "maybe he should marry her"; and Schoonover sternly responded "no, because you're a low race people."

**Other Discriminatory Conduct And Incidents**

25. Approximately twice a week, the division at Defendant where Plaintiff worked received FedEx packages, and the FedEx delivery driver was black. Tallarita and Wellman did not want to deal with the driver because he was black; they would make Plaintiff retrieve the packages; and they would tell Plaintiff "go get those niggers."

26. Often times Defendant's sales people would purchase lunch for Plaintiff's division at Defendant. Usually Plaintiff was permitted to partake in these lunches. However, on one occasion, one of Defendant's sales people, Mark Landine [phonetic] excluded Plaintiff because of his Latino background. This was witnessed by Defendant's customer, Mark [last name unknown] from Ambrich Crude Oil ("Ambrich"). After Mark from Ambrich witnessed the occurrence, he informed Mark Landine that he would not be eating with Defendant until Mark Landine permitted Plaintiff to join in the group lunch, at which point Mark Landine acquiesced. This occurred in or about the spring of 2018.

27. On a near daily basis from 2017 to 2020, Wellman, Tallarita, and Schoonover would have lunch together, while Plaintiff often sat at a nearby table. These lunches regularly involved racist banter and racist jokes against immigrants and individuals of Latino descent. All of these comments were made in the presence of Plaintiff, and Wellman, Tallarita, and Schoonover would intentionally speak in the direction of Gonzalez so that he could hear their racist comments

28. In the summer of 2019, the racist banter between Wellman, Tallarita, and Schoonover escalated as a popular news story gained traction, about a caravan of Central American immigrants that were making their way to America.

29. Wellman, Tallarita, and Schoonover made comments about how the Caravan should not come into this country; and specific comments such as "oh yeah, if someone crosses the borders,

I'll shoot them"; "yeah, I wouldn't mind shooting them;" "build the wall bigger"; " they need to shoot them in the head"; " they don't belong here" and "they don't belong here, especially the welders [that might take our jobs]".

30. Plaintiff repeatedly had to leave Defendant's workspace to escape this hostile atmosphere, particularly at lunch time, where Plaintiff would regularly and often each lunch by himself in his car in order to escape the racist and discriminatory comments.

**Plaintiff's Complaints To Management:**

31. Plaintiff's direct manager at Defendant was Mike Ostrowski ("Ostrowski").

32. On or about May 30, 2017, Gonzalez made his first verbal and written complaint regarding the racist and discriminatory comments to Ostrowski. Gonzalez complained to Mike about the racist comments and hostile atmosphere that he had to endure at Defendant at the hands of Wellman, Schoonover, and Tallarita, detailed above.

33. Ostrowski's office was situated close to the lunches and discriminatory banter described in Paragraphs 27-29. Ostrowski personally observed this discriminatory and racist conduct. Gonzalez personally observed that Ostrowski would often laugh in response to the discriminatory and racist jokes made by Wellman, Schoonover, and Tallarita; Gonzalez also observed that Ostrowski would not take any action to discipline these workers or bring an end to the described conduct.

34. Defendant's management, including Ostrowski, did not take any actions to address the racist comments and hostile work environment in response to the May 30, 2017 complaint by Gonzalez.

35. The racist comments by Gonzalez's co-workers persisted after the May 30, 2017 complaint.

36. Thereafter, Gonzalez complained to Ostrowski and Defendant's management and/or human resources approximately once every four months about the racist comments and hostile atmosphere. Defendant took no action to remedy the situation or discipline or terminate the offending workers, including, but not limited to, Wellman, Schooner, and Tallarita.

### Adverse Employment Actions And Ternmination Of Plaintiff

37. Shortly after Gonzalez made his first complaint to Defendant in May 2017 about the discriminatory conduct and hostile work atmosphere, he began to suffer adverse employment actions.

38. Ostrowki began assigning additional jobs to Gonzalez that were above and beyond his welding duties. These additional duties were not assigned to similarly-situated Caucasian employees, including Wellman, Tallarita, and Schoonover.

39. Ostrowski also began reducing the time allotted to Gonzalez to complete welding jobs. Often times, he was granted three (3) hours to complete a welding job that would typically require ten (10) hours to complete.

40. When Gonzalez was unable to complete a welding job for which his time to complete was reduced, Ostrowski would threaten him with a suspension without pay or termination. Ostrowski did not make such threats to similarly-situated Caucasian coworkers, including Wellman, Tallarita, and Schoonover.

41. From May 30, 2017 through June 2020, Gonzalez made repeated and continual complaints to Defendant about the discriminatory treatment and hostile work environment.

42. On or about June 9, 2020, Gonzalez's employment was terminated by Defendant after his repeated complaints to Defendant.

## COUNT I – NATIONAL ORIGIN DISCRIMINATION
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

43. Paragraphs 1 through 42 are incorporated herein by reference as if set forth in full herein for Paragraph 43.

44. Plaintiff, as an individual of Guatemalan descent and a member of the Latino community, is a member of a protected class based on national origin.

45. Plaintiff, at all times employed by Defendant, performed his job satisfactorily.

46. Plaintiff was terminated because of his national origin: Latino/Guatemalan.

47. Plaintiff has exhausted his administrative remedies.

48. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including lost wages, economic losses and emotional distress, in an amount to be determined at trial.

49. Defendant's actions were willful or committed with reckless indifference to Plaintiff's federally protected rights; and Defendant's conduct was malicious, oppressive, and were committed on account of Plaintiff's national origin, with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award him:

(a) All past lost wages and benefits, plus interest;

(b) Compensatory damages for injuries suffered because of this discrimination and hostile work environment;

(c) An order that Defendant reinstate Plaintiff to a position comparable to his former one, or, instead of reinstatement, award him front pay and benefits;

(d) Any applicable punitive damages, liquidated damages, or other statutory damages;

(e) All costs and reasonable attorney's fees incurred in connection with this action; and

(f) Any other damages and further relief as deemed just.

### COUNT II – HOSTILE WORK ENVIRONMENT – NATIONAL ORIGIN
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*

50. Paragraphs 1 through 49 are incorporated herein by reference as if set forth in full herein for Paragraph 50.

51. Plaintiff was subjected to unwelcome harassment during his employment at Defendant, and the harassment was based on his national origin: Latino/ Guatemalan.

52. Plaintiff's work environment at Defendant was objectively hostile due to the facts alleged at Paragraphs 10 through 30.

53. Plaintiff's work environment at Defendant was subjectively hostile, as evidenced by the fact that Plaintiff continuously and repeatedly complained to Defendant, as detailed in Paragraphs 32-36. Plaintiff had to endure the racist or discriminatory remarks and conduct on a daily or near daily basis.

54. Plaintiff engaged in protected conduct that was the cause of his harassment, including but not limited to filing numerous written and verbal complaints with Defendant, which ultimately resulted in the adverse employment actions, as detailed in Paragraphs 37-42.

55. Defendant's conduct was severe and pervasive, in that Plaintiff was subjected to both personal insults directed specifically to him regarding his national origin and race; as well as discriminatory statements made about other individuals' national origin and race, as detailed in Paragraphs 10 through 30; and there is a basis for Defendant liability for all of the facts alleged herein.

56. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

57. Defendant's actions were willful or committed with reckless indifference to Plaintiff's federally protected rights; and Defendant's conduct was malicious, oppressive, and were committed on account of Plaintiff's national origin, with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award him:

(a) All past lost wages and benefits, plus interest;

(b) Compensatory damages for injuries suffered because of this discrimination and hostile work environment;

(c) An order that Defendant reinstate Plaintiff to a position comparable to his former one, or, instead of reinstatement, award him front pay and benefits;

(d) Any applicable punitive damages, liquidated damages, or other statutory damages;

(e) All costs and reasonable attorney's fees incurred in connection with this action; and

(f) Any other damages and further relief as deemed just.

## COUNT III – RACE DISCRIMINATION
**Civil Rights Act of 1866, 42 U.S.C. § 1981.**

58. Paragraphs 1 through 57 are incorporated herein by reference as if set forth in full herein for Paragraph 58.

59. Plaintiff as a Latino and individual of Guatemalan descent is a member of a protected class based on race and national origin.

60. Plaintiff performed his job satisfactorily at all times employed by Defendant.

61. Defendant terminated Plaintiff because of his race and national origin.

62. By the conduct described above, Defendant deprived Plaintiff, a Latino, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and

privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

63. Plaintiff's supervisor, Ostrowski, was motivated by discriminatory intent against Plaintiff on the basis of his national origin, a motivation that was demonstrated by: his treatment of Plaintiff who was forced to perform work in less time than similarly-situated white employees; his threats against Plaintiff that he would be suspended or terminated; and subjecting Plaintiff to a demeaning and discriminatory atmosphere at work, despite the repeated complaints of Plaintiff.

64. As a direct and proximate cause of Defendant's actions directed at Plaintiff, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

65. But for Plaintiff's engaging in protected activity, including but not limited to filing numerous complaints with Defendant and Ostrowski as Defendant's agent, he would not have been terminated.

66. Defendant's actions were willful or committed with reckless indifference to Plaintiff's federally protected rights; and Defendant's conduct was malicious, oppressive, and were committed on account of Plaintiff's national origin, with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant, and award him:

(a) All past lost wages and benefits, plus interest;

(b) Compensatory damages for injuries suffered because of this discrimination and hostile work environment;

(c) An order that Defendant reinstate Plaintiff to a position comparable to his former one, or, instead of reinstatement, award him front pay and benefits;

(d) Any applicable punitive damages, liquidated damages, or other statutory damages;

(e) All costs and reasonable attorney's fees incurred in connection with this action; and

(f) Any other damages and further relief as deemed just.

**EDWARD GONZALEZ**

James M. Dore (ARDC No. 6296265)      s/Daniel I. Schlade
Daniel I. Schlade (ARDC No. 6273008)     Attorney For Plaintiff
Attorney For Plaintiffs
134 N. LaSalle, Suite 1208
Chicago, IL 60602
312-726-8401
Email: james@dorelawoffices.com
       jmdore70@sbcglobal.net
       danschlade@gmail.com

**PLAINTIFF DEMANDS TRIAL BY JURY**

# EXHIBIT A

EEOC Form 161 (11/2020)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| **To:** Edward Gonzalez<br>c/o Daniel Schlade<br>LAW OFFICE OF DANIEL I. SCHLADE<br>134 N. LaSalle, Suite 1208<br>Chicago, IL 60602 | **From:** Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2020-05699 | Eva Baran,<br>Investigator | (312) 872-9681 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/eh*      8/5/2021

Enclosures(s)     **Julianne Bowman,**<br>**District Director**     *(Date Issued)*

cc:   Sulzer Pumps Solutions, Inc.

c/o Sara Fowler<br>Seyfarth Shaw LLP<br>233 S. Wacker Drive #8000<br>Chicago, IL 60613

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***